## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
JUDY M. WALDMAN as Trustee for the      :
Claire Waldman Trust, Individually and on  :
Behalf of All Others Similarly Situated,    :
                                            :
                       Plaintiff,           :
                                            :     Civil Action No. 1: 08-cv-2913-SAS
                                            :
            vs.                             :
                                            :
WACHOVIA CORPORATION, et al.,               :
                                            :
                       Defendants.          :
------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY GUSTAVO SPOLIANSKY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

## PRELIMINARY STATEMENT

Movant Gustavo Spoliansky (referred to herein as "Spoliansky" or "Movant") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order (1) appointing Movant as the Lead Plaintiff of a class of purchasers of auction rate securities from defendants Wachovia Corporation and Wachovia Securities, LLC (collectively "Wachovia" or the "Defendants"); and (2) approving his selection of the law firms of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") and Schubert Jonckheer Kolbe & Kralowec LLP ("Schubert Jonckheer") as Co-Lead Counsel for the class.

As discussed below, Spoliansky respectfully submits that he should be appointed Lead Plaintiff in this action because (1) he has filed a timely motion for his appointment; (2) he has the largest financial interest in this action, with $3,025,000 in principal amount of auction rate securities at stake; and (3) he will fairly and adequately represent the interests of the class. Movant also requests that his selection of Lowey Dannenberg and Schubert Jonckheer, two highly experienced law firms in securities class action litigation, be approved by the Court.

## I.    BACKGROUND

This case concerns the sale by Wachovia of auction rate securities ("ARS"). ARS are variable rate financial instruments with long-term maturity dates, such as municipal bonds, corporate bonds and certain preferred shares issued by mutual funds. At all relevant times, the interest rates paid by ARS were set at periodic auctions conducted by major broker-dealers, including Wachovia (typically seven days). Although ARS were long-term investments and traded in a complex market, broker-dealers such as Wachovia aggressively marketed ARS to investors throughout the proposed five-year class period as highly liquid, safe, short-term

investments that delivered a higher interest rate than ordinary money market accounts. Investors often "rolled over" their investment at the "reset" date, but were assured that they also had the option of redeeming their investment on that date. Thus, the liquidity risk accepted by investors was that their right to withdraw their investment would be determined by the next reset date. On or about February 13, 2008, the market for ARS failed when major broker-dealers, including Wachovia, withdrew their support for the auctions, resulting in the sudden illiquidity of over $300 billion of ARS investments.

The complaint in this action alleges that Wachovia knew, but failed to disclose, that (i) ARS were not a suitable cash alternative to money market funds, but instead were complicated, long-term financial instruments that were subject to concealed liquidity risks; (ii) Wachovia and other broker-dealers artificially supported the ARS market to maintain the appearance of liquidity and stability of that market; (iii) Wachovia and other broker-dealers participated in ARS auctions for their own benefit, to set interest rates and prevent failed auctions; and (iv) Wachovia continued to market investments in ARS as low-risk, highly liquid investments, even after it knew that it and the other broker-dealers participating in the auctions were likely to withdraw their support from the ARS market and cause the auctions to fail and the ARS market to become illiquid. The proposed class period (the "Class Period") is March 17, 2003 through February 13, 2008.

Wachovia's conduct has caused substantial harm to investors, who have been misled into purchasing and holding ARS based on the belief that these securities were alternatives to money market funds. On or about May 12, 2008, it was reported that Wachovia was subpoenaed by the U.S. Securities and Exchange Commission and other regulators for information concerning Wachovia's role in the ARS market.

2

## II.    ARGUMENT

### A.    Spoliansky Should Be Appointed Lead Plaintiff

#### 1.    The Procedure Required Under the PSLRA
#### for Appointment of Lead Plaintiff

Under the PSLRA, the plaintiff who files the initial action must, within twenty days of filing the complaint, publish a notice in a "widely circulated national business-oriented publication or wire service," informing class members of the pendency of the action and their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must inform class members of their right to file a motion for appointment as lead plaintiff within 60 days of publication of the notice. 15 U.S.C. § 78u-4(a)(3)(A). Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, regardless of whether they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

The reviewing court must then consider the losses allegedly suffered by the various movants and select as the presumptive Lead Plaintiff the one "who has the largest financial interest . . . [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008).[1]

---

[1] The PSLRA sets forth the following standard:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
>> (aa) has either filed the complaint or made a motion in response to a notice . . . [within 60 days of publication of the notice];

3

{0828 / BRF / 00088794.DOC v1}

### 2.    Spoliansky Has Timely Moved for Appointment as Lead Plaintiff

The initial notice was published on March 17, 2008. *See* Ex. 2 to Declaration of David Harrison ("Harrison Decl."), filed herewith. The 60-day period under the PSLRA during which motions for the appointment of Lead Plaintiff must be filed expires on May 19, 2008. Spoliansky has timely moved within the statutory 60-day period. As required by the PSLRA and local rules, Spoliansky has also provided a Certification setting forth his ARS purchases during the class period. *See* Certification, Ex. 1 to the Harrison Decl. The Certification states that, among other things, Spoliansky has reviewed the complaint filed in this action, understands the responsibilities of serving as a Lead Plaintiff, and is willing to serve in the best interests of the class. *Id.* In addition, as discussed in more detail below, Spoliansky has retained experienced securities class action counsel to represent him and the class.

### 3.    Spoliansky has the Largest Financial Interest in the Relief Sought by the Class

Spoliansky believes that he is presumptively the most adequate plaintiff. Courts in the Second Circuit have developed a four-factor test for determining the largest financial interest, focusing on: (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (*i.e.*, the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (*i.e.*, the difference between the amount spent to

---

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

{0828 / BRF / 00088794.DOC v1}

purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period. *Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 104 (S.D.N.Y. 2007); *Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

Movant has a substantial financial interest in this case. As reflected in his Certification, during the proposed class period, Spoliansky purchased 121 ARS units from Wachovia at $25,000 per unit, for a total investment of $3,025,000. *See* Ex. 1 to Harrison Declaration. These units were purchased from Wachovia, within the proposed Class Period, and Spoliansky continues to hold all of these units. *Id.* Spoliansky believes that the appropriate measure of financial interest for purposes of this motion is the amount paid, *i.e.,* par value, for his illiquid ARS holdings, or $3,025,000.[2]

As of this filing, Movant is not aware of any motion for appointment as Lead Plaintiff made by a party who claims to have sustained greater financial losses by holding illiquid ARS purchased from Wachovia during the class period. Upon information and belief, because Spoliansky's financial interest in this matter is the largest of any competing applicant, he should be designated the Lead Plaintiff. *See In re Centerline Holding Co. Sec. Litig.,* 2008 WL 1959799, at \*3; *Vladimir v. Bioenvision, Inc.,* No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at \*3 (S.D.N.Y. Dec. 21, 2007) ("The PSLRA provides a rebuttable in favor of the class member with the "largest financial interest." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (bb)[]") (footnote omitted)).

---

[2] Movant may seek rescission, that is, a return of the ARS to Wachovia in exchange for his investment, in order to put him and other investors in the position they would have been in had they not be fraudulently induced to acquire securities with an undisclosed liquidity risk. *See Randall v. Loftsgarden,* 478 U.S. 647, 662 (1986) (plaintiff in 10(b)(5) case may elect to obtain rescissory damages in lieu of out-of-pocket damages). In *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594 (2d Cir.1978), the Court affirmed a Rule 10b-5 judgment for plaintiff based on a rescissory measure of damages.

5

   4.   **Spoliansky Otherwise
        <u>Satisfies the Requirements of Rule 23</u>**

In addition to possessing the largest financial interest in the outcome of the litigation, the

lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Centerline Holding Co. Sec. Litig.*, 2008

WL 1959799, at *3. Rule 23(a) provides that a party may serve as a class representative if the

following four requirements are satisfied: (1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interest of the class. At

the lead plaintiff appointment stage, "[t]he moving plaintiff must make only a preliminary

showing that the adequacy and typicality requirements under Rule 23 have been met."

*Bioenvision, supra,* 2007 WL 4526532, at *7 (collecting cases). Consequently, in deciding a

lead plaintiff motion, courts shall limit their inquiry to the typicality and adequacy prongs of

Rule 23(a), and defer examination of the remaining requirements until a class certification

motion is filed. *Sofran v. LeBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing

*In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical

of the class. Typicality exists "where the claims arise from the same conduct from which the

other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214

F.R.D. 117, 121 (S.D.N.Y. 2002); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285,

291 (2d Cir. 1992). The requirement that the proposed class representative's claims be typical of

the claims of the class does not mean, however, that the claims must be identical. *Caridad v.

Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). Typicality does not require that

6

there be no factual differences between the class representatives and the class members, because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.

Spoliansky satisfies the typicality requirements of Rule 23 because, just like all other class members, he: (1) purchased ARS from Wachovia without disclosure of the liquidity risks associated with investing in ARS and the complex nature of the ARS market; (2) held his ARS on February 13, 2008, the date the ARS market failed; and (3) as a result, is unable to liquidate his ARS at par value. *Strougo, supra,* 243 F.R.D. at 105; *Bioenvision, supra,* 2007 WL 4526532, at *7. These claims, which arise out of the same course of events, result in questions of liability that are common to all members of the proposed class.

Under Rule 23, the representative party must also "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflicts between the proposed lead plaintiff and the class members; and (2) the class representative's choice of counsel who is qualified, experienced, and able to vigorously conduct the proposed litigation. *E.g., Strougo, supra,* 243 F.R.D. at 105.

Movant's interest in aggressively and vigorously pursuing the claims against Defendants is aligned with the interests of the members of the class, who similarly suffered harm the same way, *i.e.*, they purchased ARS from Wachovia and their investments were impaired by Defendants' conduct, such that they are unable to liquidate their ARS at par value. There is no antagonism between Spoliansky's interests and those of the other members of the proposed class.

Finally, as shown below, Spoliansky's counsel, Lowey Dannenberg and Schubert Jonckheer, are highly qualified and experienced securities class action firms. Thus, Spoliansky qualifies to serve as Lead Plaintiff in this case.

7

**B.    Spoliansky's Selection of
Lead Counsel Should Be Approved**

The lead plaintiff is empowered under the PSLRA to select and retain counsel to represent the class members, subject to the approval of the court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "'Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors.'" *Bioenvision, supra,* 2007 WL 4526532, at *11 (citing cases).  Spoliansky has selected Lowey Dannenberg and Schubert Jonckheer to act as Co-Lead Counsel for the class. Firm resumes are attached to the Harrison Decl. as Ex. 3 and Ex. 4, respectively.

Lowey Dannenberg is among the preeminent plaintiffs' class action law firms, having taken leading roles in numerous important actions on behalf of defrauded investors. *See* Lowey Dannenberg Firm Resume, Ex. 3.  Lowey Dannenberg has been recognized recently as appropriate lead counsel in cases brought since the passage of the PSLRA, including post-PSLRA appointments.  Lowey Dannenberg currently serves as Lead Counsel in another securities class action pending in this Court. *In re Bayer AG Secs. Litig.,* 03 Civ. 1546 (WHP) (S.D.N.Y.).  Likewise, Schubert Jonckheer has successfully prosecuted numerous securities fraud class actions, as well as a variety of other complex shareholder actions. *See* Schubert Jonckheer Firm Resume, Ex. 4.  The Court may be assured that Lowey Dannenberg and Schubert Jonckheer will provide the highest caliber of legal representation to the proposed class.

## III.    CONCLUSION

For the foregoing reasons stated above, Spoliansky respectfully requests that he be appointed as Lead Plaintiff for the class and that Lowey Dannenberg and Schubert Jonckheer be appointed as Co-Lead Counsel for the class.

{0828 / BRF / 00088794.DOC v1}

Date:   May 19, 2008

Respectfully submitted,

LOWEY DANNENBERG COHEN & HART, P.C.

By:

Barbara Hart (BH-3231)
David C. Harrison (DH-3834)
Todd S. Garber (TG-4620)
One North Broadway, Suite 509
White Plains, NY 10601
Telephone: (914) 997-0500
Telecopier: (914) 997-0035
E-Mail: dharrison@lowey.com

SCHUBERT JONCKHEER KOLBE
    & KRALOWEC LLP
Robert C. Schubert
Willem F. Jonckheer
Aaron H. Darsky
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone: (415) 788-4220
Telecopier: (415) 788-0161

*Counsel for Movant Gustavo Spoliansky and
[Proposed] Co-Lead Counsel for the Class*

9

## CERTIFICATE OF SERVICE

I certify that I am over eighteen years of age and am not a party to this action. On May 19, 2008, I served a copy of (1) Gustavo Spoliansky's Notice of Motion For Appointment as Lead Plaintiff and Approval of Lead Counsel; (2) the Memorandum of Law in Support of Gustavo Spoliansky's Motion For Appointment as Lead Plaintiff, and Approval of Lead Counsel; (3) the Declaration of David C. Harrison In Support Of The Memorandum Of Law In Support Of The Motion Of Gustavo Spoliansky For Appointment as Lead Plaintiff and Approval of Lead Counsel; and (4) a Proposed Order, by using the CM/ECF system which will send notification of such filing to registered counsel electronically. A true and correct copy of the foregoing was sent via First Class Mail to any party or counsel not receiving electronic service from the CM/ECF.

Dated: May 19, 2008
    White Plains, New York

                                    Todd S. Garber

{0828 / MISC / 00088817.DOC v1}
2091 / MISC / 00088514.WPD v1