UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Judy M. Waldman as Trustee for the Claire Waldman Trust, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Wachovia Corporation and Wachovia Securities, LLC,<br><br>Defendants. | Case No. 1:08-CV-2913-SAS |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
ARTHUR MAXWELL, CURLIN INC., RALPH OHLERS AND JACKIE OHLERS FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF
COUNSEL**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 4

    I.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF ............................. 4

        A.    The Procedure Required By the PSLRA ..................................................... 4

        B.    Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA ........... 5

            1.    Movants Have Complied With the PSLRA and Should Be Appointed Lead Plaintiff .................................................................. 5

            2.    Movants Have The Requisite Financial Interest In The Relief Sought By The Class ....................................................................... 6

            3.    Movants Otherwise Satisfy Rule 23 ............................................... 8

            4.    Aggregation of Movants' Financial Interests Is Appropriate ....... 10

    II.    MOVANTS' CHOICE OF COUNSEL SHOULD BE APPROVED ................... 11

CONCLUSION ............................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Case**                                                                                                                                 **Page**

*Albert Fadem Trust v. Citigroup, Inc.*,
    239 F. Supp. 2d 344 (S.D.N.Y. 2002) .......................................................................... 5, 8

*In re American Bank Note Holographics Secs. Litig.*,
    93 F. Supp. 2d 424 (S.D.N.Y. 2000) ............................................................................... 10

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................................................... 6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................................. 6

*In re Centerline Holding Co. Sec. Litig.*,
    2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008) ................................................ 10

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) .............................................................................. 6, 8, 9

*In re Tarragon Corp. Sec. Litig.*,
    2007 U.S. Dist LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ................................................ 10

*Lax v. First Merchs. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. 1997) ............................................................... 6

*Reimer v. Ambac Fin. Group, Inc.*,
    2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .......................................... 10, 11

*Vladimir v. Bioenvision*,
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) .............................................. 11

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................. 10, 11

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................................ passim

Fed. R. Civ. P. 23 ............................................................................................................ 4, 5, 8-10

## INTRODUCTION

Class members Arthur Maxwell, Curlin Inc., Ralph Ohlers and Jackie Ohlers (collectively "Movants") move this Court for entry of an order:  (1) appointing them Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and; (2) approving their selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel, Stueve Siegel Hanson LLP ("Stueve Siegel") to serve as Co-Lead Counsel, and Seeger Weiss LLP ("Seeger Weiss") to serve as Liaison Counsel pursuant to the PSLRA.

Movants should be appointed Lead Plaintiff because they:  (1) timely filed a motion for appointment of Lead Plaintiff; (2) have a substantial collective financial interest in the action, as they collectively purchased $16,200,000 worth of auction rate securities from Wachovia Corporation and Wachovia Securities, LLC, (collectively "Wachovia") during the Class Period, held nearly all of those securities at the end of the Class Period, and currently hold $14,975,000 of these securities; and (3) will adequately represent the interests of the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Because the presumptive Lead Plaintiff selects counsel to represent the class under the PSLRA, and Girard Gibbs, Stueve Siegel and Seeger Weiss are experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the proposed Lead Plaintiff's selection of counsel to represent the Class.

## FACTUAL BACKGROUND

This litigation arises out of "the hostage crisis otherwise known as the auction-rate securities market."  Gretchen Morgenson, "How to Clear a Road to Redemption," *New York Times* (May 4, 2008).[1]  As the *New York Times* explained earlier this month, "Some $300 billion worth of investors' funds—advertised as being easy as pie to cash in—are still locked up.  And the brokerage firms that got investors into this mess are doing little to help."  *Id.*

---

[1] http://www.nytimes.com/2008/05/04/business/04gret.html?scp=2&sq=auction+rate&st=nyt.

As described in the Complaint filed in this action, auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-term municipal debt. Despite the complex, long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as risk-free, cash-equivalent alternatives to money-market funds.

Wachovia was a substantial broker-dealer of auction rate securities. Through its financial advisors, Wachovia represented to investors in its uniform sales presentations and written materials that auction rate securities were the same as cash and were safe, highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest.

Wachovia knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at the time of sale because Wachovia and other broker-dealers were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability; (3) Wachovia and other broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) Wachovia continued to market auction rate securities as liquid investments, even after it had determined that it and other broker-dealers were likely to withdraw their support for the periodic auctions which would result in a "freeze" of the auction rate securities market. As a result of these material non-disclosures, the value of the auction rate securities Wachovia sold was not as represented.

On February 13, 2008, all of the major broker-dealers, including Wachovia, withdrew their support for the auction rate securities market, causing 87 percent of all auctions to fail. The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid. An analyst for Citigroup, the largest underwriter of auction rate securities,

recently predicted that the auction rate securities market will "cease to exist" entirely and that the collapse of the auction rate securities market could cause investors to "stop using the services of their brokerage and/or asset management firms as a result of a loss of trust." Martin Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April 15, 2008).[2]

Wachovia was handsomely compensated for its participation in the auction rate securities market. Wachovia received significant underwriting and broker-dealer fees from issuers of auction rate securities, as well as substantial commissions on the sales of auction rate securities from investors.

The auction rate securities debacle has caught the attention of federal, state and industry regulators. Investigations are now being conducted by the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, the State of New York, and a nine-state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire, New Jersey, Texas and Washington.[3] On May 12, 2008, Wachovia disclosed in its Form 10-Q for the quarter ended on March 31, 2008, that it had "received inquiries and subpoenas from the SEC and several state regulators requesting information concerning the underwriting, sale and subsequent auctions of municipal auction rate securities and auction rate preferred securities."

Investors are also pursuing their rights. This class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who purchased auction rate securities from Wachovia between March 19, 2003 and February 13, 2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.

---

[2] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

[3] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

**ARGUMENT**

I.   **MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF**

Movants are an individual, a Florida corporation, and a married couple that collectively purchased $16,200,000 in auction rate securities from Wachovia during the Class period. They held nearly all of those securities when the auction market collapsed at the end of the Class Period.[4] Movants respectfully submit that they should be appointed Lead Plaintiff because they have complied with all of the PSLRA's requirements, have demonstrated the largest financial interest in this litigation, and otherwise meet the relevant requirements of Fed. R. Civ. P. 23.

   A.   **The Procedure Required By the PSLRA**

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Movants' counsel, on behalf of named plaintiff Judy M. Waldman as Trustee for the Claire Waldman Trust, filed the first and only action relating to Wachovia's sale of auction rate securities, and caused notice to be published on *Business Wire* on March 19, 2008. *See* Declaration of Jonathan K. Levine In Support of the Motion of Arthur Maxwell, Curlin Inc., Ralph Ohlers and Jackie Ohlers for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Levine Dec."), Ex. A. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class

---

[4] Mr. Ohlers purchased and held his auction rate securities through the Ralph C. Ohlers Individual K Pension Plan Trust dated 7/06/2004 and the Ralph C. Ohlers Revocable Trust dated 7/17/2001. Mr. Ohlers is the sole trustee of each of those trusts. Mrs. Ohlers purchased and held her auction rate securities through the Jackie K. Ohlers Revocable Trust dated 7/17/2001, of which she is the sole trustee. The Ohlers bring their claims in their capacities as trustees of their respective trusts.

may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Albert Fadem Trust v. Citigroup, Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (Swain, J.).

    **B.**    **Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA**

        **1.**    **Movants Have Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

As notice of the filing of the initial action was published on March 19, 2008, the time period in which class members may move to be appointed lead plaintiff in this case expires on May 19, 2008. *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B). This application, filed on May 19, 2008, is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Levine Decl., Ex. B-E (Movants' certifications). In addition, Movants have selected and retained competent counsel to represent themselves and the Class. *See id.*, Ex. F (firm resume of Girard Gibbs), Ex. G (firm resume of Stueve Siegel), Ex. H (firm resume of Seeger Weiss). Accordingly, Movants have satisfied the

5

requirements of 15 U.S.C. § 78u-4(a)(3)(B), and the Court should approve their application for appointment as Lead Plaintiff and their selection of counsel to represent the Class.

### 2. Movants Have The Requisite Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method." *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. Generally, courts have considered the following factors in determining a movant's financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Fuwei Films,* 247 F.R.D. at 437 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. 1997)).

Movants have a substantial financial interest in this case. Beginning in October 2007, Mr. Maxwell purchased municipal auction rate securities with a par value of $12,375,000 from Wachovia. *See* Levine Decl., Ex. B, Attachment A. In August 2007, Curlin purchased 64 shares of auction rate securities for $25,000 each from Wachovia for a total of $1,600,000. On February 13, 2007—just as Wachovia and the other broker-dealers withdrew their support from the auction market—Curlin purchased an additional 20 shares of auction rate securities from Wachovia for $500,000. *See* Levine Decl., Ex. C, Attachment A. In 2006 and 2007, Mr. Ohlers

purchased 57 shares of auction rate securities for $25,000 each from Wachovia for a total of $1,425,000. *See* Levine Decl., Ex. D, Attachment A. In 2007, Mrs. Ohlers purchased 12 shares of auction rate securities for $25,000 each from Wachovia for a total of $300,000. *See* Levine Decl., Ex. E, Attachment A.

      Wachovia had not disclosed the risks associated with auction rate securities prior to selling them to Movants. Movants continued to hold nearly all of those shares at the close of the Class period on February 13, 2008.[5] *See* Levine Decl., Ex. I (analysis of Movants' Class Period transactions). Upon the collapse of the auction market at the end of the Class Period, all of those shares were rendered illiquid, precluding the proposed Lead Plaintiff from selling the auction rate securities on the auction market. Between February and May 2008, municipal issuers redeemed $1,075,000 of Mr. Maxwell's auction rate securities. On May 6, 2008, 6 shares of Mr. Ohlers' auction rate securities were redeemed at par by one of their issuers, Eaton Vance Corp., for a total of $150,000. As a result, Mr. Ohlers currently holds 51 shares of auction rate securities with a par value of $1,275,000 which he purchased from Wachovia during the Class Period. None of Curlin's shares or Mrs. Ohlers' shares has been redeemed. *See Id.*

      Because Wachovia sold auction rate securities as highly liquid cash equivalents, and these securities are now illiquid, a movant's financial interest can be measured conservatively by the amount of the movant's investment that remains illiquid—in other words, the par value of the auction rate securities that were purchased from Wachovia during the Class period that have not been redeemed by the issuer. Under this formulation, Movants' cumulative financial interest for purposes of this motion, is $14,975,000—the combined par value of the shares of now-illiquid auction rate securities they purchased from Wachovia during the Class period that were not redeemed after the Class Period. Given the nature of the securities at issue, this is an objective and conservative method for calculating the financial interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

---

[5] $100,000 of Mr. Maxwell's auction rate securities were redeemed on February 12, 2008, the day before the end of the Class Period.

7

Movants know of no other applicant with a greater financial interest seeking appointment as Lead Plaintiff in this matter. They thus satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Movants Otherwise Satisfy Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — concern the personal characteristics of the class representative. Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), as "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *In re Fuwei Films,* 247 F.R.D. at 436 (quotations omitted); *see also Fadem Trust,* 239 F. Supp. 2d at 347 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are based on similar legal theories as the claims of the class members. *See, e.g., In re Fuwei Films,* 247 F.R.D. at 436. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of

8

the claims asserted that determines whether the class representative is typical. *See id.* ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted).

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from Wachovia during the Class Period as a result of Wachovia's allegedly materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held these auction rate securities on the date that Wachovia and all other broker-dealers withdrew their support for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As Movants' claims and the claims of other Class members arise out of the same course of events, Movants satisfy the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its adequacy inquiry to the existence of any conflict between the proposed Lead Plaintiff's interests and the interests of Class members. A proposed lead plaintiff is adequate where: (1) there is no conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel is qualified, experienced and generally able to conduct the proposed litigation. *In re Fuwei Films,* 247 F.R.D. at 436 (citations omitted). Additionally, the lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy." *Id.*

Movants are adequate representatives of the Class, as their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests. Like Class members, Movants acquired now-illiquid auction rate securities based on Wachovia's material non-disclosures and misleading statements about auction rate securities and the auction market. Further, Movants have taken significant steps that demonstrate they will protect the interests of the Class: they have retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action. Movants' proposed counsel are qualified, experienced and able to conduct this complex litigation in a

9

professional manner. Movants are not subject to any unique defenses or other legal hindrances. Finally, Movants, who currently hold $14,975,000 worth of illiquid auction rate securities purchased from Wachovia during the Class period, have a sufficient interest in the outcome of this case to ensure vigorous advocacy. For these reasons, Movants *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4. Aggregation of Movants' Financial Interests Is Appropriate

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Under the PSLRA, a "person or group of persons" may be an adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this district routinely permit aggregated investors to serve as Lead Plaintiff. *See, e.g., In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *8 (S.D.N.Y. May 5, 2008) (Schneidlin, J.) ("[W]here aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements."); *Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist LEXIS 91418, *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *In re American Bank Note Holographics Secs. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) (McMahon, J.) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 132

(S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *40-42 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.). Courts recognize, however, that appointment of an aggregate lead plaintiff may be "inappropriate where the group is too large." *Reimer,* 2008 U.S. Dist. LEXIS 38729, at *8 (citing *Weltz,* 1999 F.R.D. at 133). The group must not be "so cumbersome as to deliver the control of the litigation into the hands of the lawyers." *Id.*

Movants are an individual, a corporation, and a married couple that purchased auction rate securities and held them when the auction market collapsed. Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit. They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives. *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3, Ex. D at ¶ 3, Ex. E at ¶ 3. As a group, they are neither too large nor too cumbersome to manage this litigation effectively. Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## II.  MOVANTS' CHOICE OF COUNSEL SHOULD BE APPROVED

Due to the complexity of this litigation, Movants have selected three law firms to represent the class in this matter, subject to Court approval: Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors. *See* Levine Decl., Ex. F. Girard Gibbs has investigated the auction rate securities market since its collapse in February 2008 and filed the initial case against Wachovia. Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities. Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests. Girard Gibbs has access to

11

numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case. This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations.

Like Girard Gibbs, Stueve Siegel has taken a lead role in investigating and prosecuting cases related to auction rate securities, including the case pending against Wachovia. Since the collapse of the auction market in February 2008, Stueve Siegel in partnership with other firms has taken the initiative in researching the auction rate securities industry, investigating potential claims, drafting the pertinent documents for the commencement of the litigation, and contacting investors who have requested advice from an attorney. As evidenced by its firm resume, Stueve Siegel has extensive experience prosecuting and litigating class and complex litigation in courts across the country, including securities matters. *See* Levine Decl., Ex. G. Given its experience with complex litigation and its familiarity with the auction rate securities market, Stueve Siegel is well-equipped to serve as Co-Lead Counsel in this litigation.

Over the past decade, Seeger Weiss has emerged as one of the leading plaintiffs' firms in the United States, as demonstrated by its inclusion in the National Law Journal's 2007 "Plaintiff's Hot List" of nationally elite firms. With approximately 30 lawyers operating out of offices in four states, the firm's expertise in the areas of class action and mass tort litigation has been recognized by courts throughout the U.S. As reflected in the firm biography, Seeger Weiss has been appointed to numerous positions of leadership in a variety of multidistrict and complex litigations including securities fraud class actions. *See* Levine Decl., Ex. H. Currently, Seeger Weiss serves on the Plaintiffs' Steering Committee in the *IPO Securities Litigation*, one of the largest and most significant coordinated securities fraud prosecutions in United States history. Seeger Weiss also holds or has held leadership roles in other securities matters, including: *PixelPlus Securities Litigation*, *Sim, et al. v. Aspen Technology, et al.*, *Babcock v. Citigroup*, *Victor v. UBS Paine Weber, et al.*, and *ATEC Group, Inc. Class Action*. Along with Girard Gibbs and Stueve Siegel, Seeger Weiss has been communicating with Class members and investigating the claims alleged in this case since the collapse of the auction market.

Accordingly, Movants' selection of Lead, Co-Lead and Liaison Counsel should be approved.

## CONCLUSION

For the foregoing reasons, movants satisfy the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  Movants respectfully request that this Court:  (1) appoint them Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (2) approve their selection of Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

DATED: May 19, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By:   *Jonathan K. Levine*
        Jonathan K. Levine (JL-8390)

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4500
Facsimile:  (415) 981-4846

**Proposed Lead Counsel**

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO, 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

**Proposed Co-Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Telephone:  (212) 584-0757
Facsimile:  (212) 584-0799

**Proposed Liaison Counsel**

# CERTIFICATE OF SERVICE

I, Angeline C. Ellis, hereby certify that on May 19, 2008, I filed the following document(s):

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARTHUR MAXWELL, CURLIN INC., RALPH OHLERS AND JACKIE OHLERS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

By ECF (Electronic Case Filing): I e-filed the above-detailed document utilizing the United States District Court, Southern District of New York's mandated ECF service on May 19, 2008. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, CA  May 19, 2008

/S/ Angeline C. Ellis